**Paul C. Galm, OSB No. 002600**
Email: paul@galmlaw.com
**PAUL GALM, ATTORNEY AT LAW, LLC**
**12220 SW First Street Beaverton, Oregon 97005**
Telephone: (503) 644-9000
Facsimile: (503) 644-9050

**Josh Lamborn, OSB No. 973090**
E-mail: jpl@pdxinjury.com
**THE LAW OFFICE OF JOSH LAMBORN, PC**
**50 SW Pine St Ste 301**
**Portland OR  97204**
Telephone: (503) 546-0461
Facsimile: (503) 914-1507
Of Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| VAN LOO FIDUCIARY SERVICES, LLC, personal representative for the Estate of Dominic Francis Genise, Deceased,<br><br>Plaintiff,<br>v.<br><br>STATE OF OREGON, by and through its Department of Corrections; TOMME RALLS, an individual; and JOHN DOES 1-10,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 USC § 1983) AND SUPPLEMENTAL STATE CLAIMS**<br><br>**DEMAND FOR TRIAL BY JURY** |

## INTRODUCTION

1.      On May 27, 2019, Dominic Genise (then age 37) went to the infirmary at the Orgon State Pententiary around 8:00 a.m.  Mr. Genise, who had a documented history of high blood pressure, told a nurse that he had been experiencing chest pain for hours.  The nurse documented that Mr. Genise's blood pressure was high and that he was sweating.

Page 1 – COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

The nurse performed an ECG on Mr. Genise, then misread the ECG as normal. Without consulting a doctor, the nurse told Mr. Genise that he was experiencing gas and gave him antacids. Mr. Genise was found dead in his cell around 6:15 p.m. that same day. He died of a heart attack, which would have been treatable if he had been taken to the hospital after his infirmary visit. Mr. Genise is survived by his wife, mother, and four children.

## JURISDICTION AND VENUE

2. This action arises under the constitution and laws of the United States and jurisdiction is based on 28 USC § 1331 and 28 USC § 1343(a). This Court has pendent jurisdiction of the state law claims pursuant to 28 USC § 1367.

## PARTIES

3. Plaintiff Van Loo Fiduciary Services, LLC is the duly appointed personal representative of the Estate of Dominic Francis Genise, deceased. Dominic Genise was born in Colusa, California on December 25, 1981. At the time of his death, Dominic Genise was a citizen and a resident of the State of Oregon. He is survived by his wife (Stacy Genise), his mother (Janet Vanderstar), and his four children (Mersadez Genise, Aiden Genise, Joselyn Genise, and Ryan Sikes).

4. The Department of Corrections ("ODOC") is a duly authorized agency of the defendant State of Oregon. ODOC has custody of adults sentenced to prison for more than 12 months, housing approximately 14,900 adults in 14 state prisons throughout Oregon. One of those prisons is the Oregon State Penitentiary ("OSP"), which is located in Marion County. OSP is an Oregon State correctional facility with a capacity of 2,242 people.

Page 2 – COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

5. ODOC's Health Services provides medical care to people in custody, including care for acute illnesses and chronic diseases. According to the ODOC website, OSP "has a full-service infirmary."

6. Defendant Tomme Ralls is a registered nurse who was employed by ODOC to work at OSP. At all times herein pertinent, defendant Ralls was acting in her individual capacity under color of state law.

7. John Does 1-10 are State of Oregon employees who interacted with Mr. Genise on May 27, 2019 and/or State of Oregon employees who were responsible for the supervision and/or training of defendant Ralls. At all times herein pertinent, defendants John Does 1-10 were acting in their individual capacity and under color of state law.

## FACTUAL ALLEGATIONS

8. On June 17, 2016, Dominic Genise (then age 35) was sentenced to 66 months in ODOC custody after pleading guilty to one count of Identity Theft and two counts of Unauthorized Use of a Vehicle, both of which Class C felonies.

9. Dominic Genise entered ODOC custody on June 20, 2016. He was first housed at Coffee Creek Correctional Facility.

10. On June 21, 2016, Mr. Genise had a medical history workup and physical examination. The ODOC employee who performed this examination noted that Mr. Genise had a history of hypertension that had been treated in the past with lisinopril and that his blood pressure was borderline high. ODOC records also indicate that Mr. Genise had a number of other known risk factors for heart disease.

11. Lisinopril is an ACE inhibitor that is used to treat high blood pressure, which can cause a variety of problems, including heart attack, heart failure and stroke.

12. Over the next month, Mr. Genise received repeated blood pressure checks and met with the ODOC medical staff about his high blood pressure.

13. On July 22, 2016, ODOC moved Mr. Genise to OSP. On July 27, 2016, ODOC moved Mr. Genise to the Shutter Creek Correctional Institution ("SCCI").

14. Over the next few weeks, Mr. Genise again received repeated blood pressure checks and met with the ODOC medical staff about his high blood pressure.

15. On August 14, 2016, Mr. Genise underwent an electrocardiogram ("ECG"), which read as normal. The printed ECG result said that it was a "[n]ormal ECG." The ODOC medical staff ordered this ECG in order to get a "baseline" ECG for Mr. Genise.

16. On information and belief, the result of the 2016 ECG was reviewed by a doctor or other provider, who confirmed that it was normal.

17. On August 15, 2016, Mr. Genise was seen by the ODOC medical staff for a chronic care visit related to cardiovascular issues and hypertension.

18. On August 17, 2016, ODOC moved Mr. Genise to Oregon State Correctional Institution ("OSCI").

19. Over the next few weeks, Mr. Genise again received repeated blood pressure checks and met with the ODOC medical staff about his high blood pressure.

20. On December 5, 2016, ODOC moved Mr. Genise back to SCCI.

21. On January 4, 2017, Mr. Genise was seen by the ODOC medical staff for a

Page 4 – COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

chronic care visit related to cardiovascular issues and hypertension.

22. On June 20, 2017, Mr. Genise was seen by the ODOC medical staff for a chronic care visit related to cardiovascular issues and hypertension.

23. On January 24, 2018, Mr. Genise was seen by the ODOC medical staff for a chronic care visit related to cardiovascular issues and hypertension.

24. On July 24, 2018, Mr. Genise was seen by the ODOC medical staff for a chronic care visit related to cardiovascular issues and hypertension.

25. On September 11, 2018, Mr. Genise was seen by the ODOC medical staff for a chronic care visit related to cardiovascular issues and hypertension. The medical staff prescribed lisinopril to help control his high blood pressure.

26. Over the next few weeks, Mr. Genise again received repeated blood pressure checks and met with the ODOC medical staff about his high blood pressure.

27. On October 10, 2018, ODOC moved Mr. Genise back to OSP.

28. On October 11, 2018, Mr. Genise sent a request to the medical staff because he had not received his lisinopril after his transfer to OSP and could "feel the effects [on] my blood pressure already." A member of the ODOC medical staff noted that his "blood pressure med was refilled" that day.

29. On October 13, 2018, Mr. Genise was seen by the ODOC medical staff about his high blood pressure.

30. On January 17, 2019, Mr. Genise had a projected release date of July 19, 2020.

31. On January 25, 2019, Mr. Genise was seen by the ODOC medical staff for a chronic care visit related to cardiovascular issues and hypertension. The medical staff continued to prescribe lisinopril to help control his high blood pressure.

32. On April 10, 2019, Mr. Genise was seen by a member of the ODOC medical staff, who noted his hypertension and increased the dose of lisinopril prescribed to him.

33. The medical history set forth in paragraphs 10 to 32 above, including the baseline ECG, was documented in Mr. Genise's ODOC medical records and were available to ODOC medical staff at OSP.

34. On May 27, 2019, Mr. Genise's cellmate (Shane Pew) woke up around 2:30 a.m. because Mr. Genise was vomiting and complaining of pain in his chest and down his arm. Neither of them were able to go back to sleep because Mr. Genise was in distress.

35. At approximately 7:00 a.m., Mr. Genise and Mr. Pew went to the kitchen to start their jobs. The kitchen coordinator wrote Mr. Genise a pass to go to the infirmary.

36. At approximately 8:00 a.m., Mr. Genise saw Registered Nurse Tomme Ralls in the infirmary. Nurse Ralls noted that Mr. Genise "complained of sternal chest pain [that] started about 2:00 a.m. and has gotten increasingly worse." Nurse Ralls documented that Mr. Genise was sweating. Nurse Ralls took Mr. Genise's blood pressure, which was elevated (150/88).

37. Because she was concerned about a potential heart problem, Nurse Ralls performed an electrocardiogram ("ECG" or "EKG") on Mr. Genise. An ECG records the electrical signals in the heart and is used to detect heart problems, including irregular

heartbeats and heart attacks.

38. The printed ECG result noted that there was a "slight intraventricular conduction delay" and that the ECG was "without significant abnormalities." Unlike the 2016 ECG, set forth in paragraph 15 above, the printed ECG result did not say that it was "normal."

39. Nurse Ralls noted in the medical chart that the ECG performed on May 27, 2019 "reads normal." On information and belief, Nurse Ralls did not have this reading reviewed by a doctor or other provider.

40. The ECG taken on May 27, 2019 was not normal. To the contrary, the ECG raised several red flags that Mr. Genise might be having a heart attack and should have been sent to the hospital.

41. According to her chart note, Nurse Ralls did not listen to Mr. Genise's heart or lungs, did not take a complete history, and did not examine his legs for swelling. These are all basic elements of a proper workup for someone with a potential heart problem.

42. Nurse Ralls kept Mr. Genise in the infirmary in order to check his blood pressure after a waiting period of approximately 30 minutes. When Nurse Ralls took Mr. Genise's blood pressure a second time, the result was within normal limits (122/78).

43. Because the symptoms of a heart attack can fluctuate, this waiting period was not clinically indicated. Regardless of the results of the second blood pressure check, Mr. Genise needed to be sent to the hospital immediately. Given Mr. Genise's medical history and the information available that morning, Mr. Genise's normal blood pressure result after

a 30 minute waiting period did not mean that he was not having a heart attack. On the contrary, his return to baseline was consistent with having experienced a serious cardiac event.

44.     Nurse Ralls documented her assessment of Mr. Genise as "alt[eration] in comfort." Nurse Ralls documented her plan for Mr. Genise as follows: "[B]y end of [ECG] pain [decreased and no] longer sweating. [Follow up with] provider, antacid given. [Patient] agrees with [plan of care, [return to clinic] if pain worsens."

45.     Mr. Genise returned to his cell after this clinic visit.

46.     At approximately 6:10 p.m., ODOC employee Jesse Emerson heard someone yell "Man down!" He found Mr. Genise on the floor of his cell, laying on his back with his hand stuck in the cell doorway. Mr. Genise had vomit coming out of his mouth and a blue-purple tinge to his skin. He was not breathing.

47.     Members of the ODOC medical staff responded to Mr. Genise's cell. They documented that Mr. Genise was "cold to touch" and "appeared to have vomited."

48.     At approximately 6:30 p.m., paramedics from Salem Fire arrived and took over the emergency response.

49.     Mr. Genise was pronounced dead at 6:36 p.m. on May 27, 2019.

50.     Julie Pfenning, a nurse employed by ODOC, told the Oregon State Police investigator that Mr. "Genise's medical records stated he visited the infirmary this morning at about 8:00 a.m., after complaining of chest pains. An EKG was attached to inmate Genise which revealed his vital signs were within normal limits." Ms. Pfenning also told

the Oregon State Police investigator that Mr. Genise "received antacid tablets (420 mg) and was released from the infirmary."

51.     On May 29, 2019, Dr. Michelle Stauffenberg performed an autopsy on Mr. Genise.  Dr. Stauffenberg concluded that Mr. Genise's cause of death was atherosclerotic cardiovascular disease, with an additional significant condition of hypertensive cardiovascular disease.  Dr. Stauffenberg wrote in her autopsy report: "It is my opinion that [Mr. Genise] died as a result of atherosclerosis of the coronary arteries (hardening of the arteries)."

52.     Salem Hospital is located approximately two miles from OSP.

53.     If Mr. Genise had been taken to Salem Hospital at approximately 8:00 a.m. on the morning of May 27, 2019, he would have received treatment for a suspected heart attack and would have survived.

54.     On information and belief, no one was disciplined or fired as a result of Mr. Genise's death.

## FIRST CLAIM FOR RELIEF

### Civil Rights Claim – Eighth Amendment – 42 USC § 1983

55.     Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 54, above.

56.     Defendant Ralls was deliberately indifferent to Dominic Genise's serious medical needs in one or more of the following ways:

   a.   In choosing not to consult with a doctor or other provider about

      Dominic Genise;

  b. In choosing not to perform a complete physical examination of Dominic Genise;

  c. In choosing not to take a complete history from Dominic Genise;

  d. In choosing to ignore Dominic Genise's significant risk factors for heart attack in making a diagnosis;

  e. In choosing to make a diagnosis without appropriate training;

  f. In choosing to read the ECG without being qualified to do so;

  g. In choosing not to have a doctor or other provider review the ECG;

  h. In choosing not to send Dominic Genise to the hospital;

  i. In choosing not to follow ODOC protocols; and

  j. In choosing not to provide Dominic Genise with proper medical attention to his serious medical needs.

57.    Each of defendant Ralls' choices as set forth in paragraph 56 above, constituted a substantial departure from professional judgment and violated Dominic Genise's rights under the Eighth Amendment of the U.S. Constitution. As a proximate cause of each of those choices, Dominic Genise endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he died; Mr. Genise's wife, mother, and children have been denied his love, society and companionship; and Mr. Genise's estate lost incurred funeral and burial expenses. Mr. Genise's estate is entitled to economic damages in an amount to be determined and noneconomic damages in the sum

of $7,500,000.

58.  Plaintiff is entitled to her necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## SECOND CLAIM FOR RELIEF

### Negligence – Wrongful Death

59.  Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 58, above.

60.  The actions of defendant State of Oregon, acting by and through its employees and agents, including but not limited to defendant Ralls, were below the applicable or reasonable standard of care and negligently and unreasonably created a foreseeable risk of harm in one or more of the following particulars:

   a. In failing to consult with a doctor or other provider about Dominic Genise;

   b. In failing to perform a complete physical examination of Dominic Genise;

   c. In failing to take a complete history from Dominic Genise;

   d. In failing to consider Dominic Genise's significant risk factors for heart attack in making a diagnosis;

   e. In failing to make an accurate diagnosis;

   f. In failing to properly read the ECG;

   g. In failing to compare the 2019 ECG to the 2016 baseline ECG;

Page 11 – COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

  h. In failing to have a doctor or other provider review the ECG;

  i. In failing to send Dominic Genise to the hospital;

  j. In failing to follow ODOC protocols;

  k. In failing to provide Dominic Genise with proper medical attention to his serious medical needs; and

  l. In choosing not to properly supervise and/or train defendant Ralls.

61. As a direct result of the actions and inactions of defendants State of Oregon and Ralls, as set forth in paragraph 60 above, Dominic Genise endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he died; Mr. Genise's wife, mother, and children have been denied his love, society and companionship; and Mr. Genise's estate incurred funeral and burial expenses. Mr. Genise's estate is entitled to economic damages in an amount to be determined and noneconomic damages in the sum of $7,500,000.

62. Notice pursuant to the Oregon Tort Claims Act was given to defendants State of Oregon and Ralls within the time prescribed by law.

WHEREFORE, Plaintiff prays for judgment as follows:

**On the First Claim for Relief**, for judgment in favor of plaintiff The Estate of Dominic Genise and against defendant Ralls for economic damages in an amount to be determined for noneconomic damages in the amount of $7,500,000; and for necessarily and reasonably incurred attorney fees and costs; and

**On the Second Claim for Relief**, for judgment in favor of plaintiff The Estate of Dominic Genise and against defendants State of Oregon and Ralls, and each of them, for economic damages in an amount to be determined; for noneconomic damages in the amount of $7,500,000; and for necessarily and reasonably incurred costs.

DATED this **22nd** day of March, 2021.

/s/ Paul C. Galm
Paul C. Galm, OSB #002600
Josh Lamborn, OSB #973090
*Of Attorneys for Plaintiff*

Plaintiff demands Trial by Jury.

DATED this **22nd** day of March, 2021.

/s/ Paul C. Galm
Paul C. Galm, OSB #002600
Josh Lamborn, OSB #973090
*Of Attorneys for Plaintiff*